IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| EVERICK MONK | § | |
| v. | § | CIVIL ACTION NO. 5:21cv146-RWS-JBB |
| TURN KEY MEDICAL, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Everick Monk, a former inmate of the Bowie County Correctional Center proceeding *pro se*, filed this civil action complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. Plaintiff's amended complaint names as Defendants Warden Wilson, Sheriff Neal, Jail Administrator Ms. Austin, Sgt. Henderson, jail officials Lt. McGhee, Lt. Bennett, and Lt. Jackson, transportation officers Ponder and O'Dell, Turn Key Medical, a nurse practitioner at the jail named Hillhouse, jail nurses named Ebey, McFaul, Owenby, and Paul, and unknown members of the staff at Wadley Regional Hospital. Of these Defendants, Bennett, McGhee, Neal, and Ponder have filed a motion for summary judgment on the issue of exhaustion of administrative remedies and Hillhouse, McFaul, Owenby, and Paul have filed a separate motion to dismiss.

**I. The Plaintiff's Claims**

Plaintiff's amended complaint (Dkt. No. 11) is the operative pleading in the case. The Fifth Circuit has explained that an amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading. *Raskin on behalf of JD v. Dallas Independent School District*, 69

F.4th 280, 282 n.1 (5th Cir. 2023), (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)). The order for Plaintiff to amend his petition (Dkt. No. 9) directed that he provide a concise statement of each of the claims he wished to raise and the individuals whom he wanted to name as defendants, a statement showing how each of the named defendants is involved, the harm which he suffered, the relief sought, and a statement of whether or not he has exhausted his administrative remedies. The order also advised Plaintiff that the amended complaint would replace the original and become the active pleading in the lawsuit.

Plaintiff states that on October 29, 2021, while he was in the Bi-State Jail, Nurse Phipps gave him someone else's medication. This caused him to suffer chest pain and fainting. He was taken to Wadley Hospital, where he says that he was deliberately denied medical attention. Plaintiff states that Sgt. Henderson was notified when Plaintiff fainted but refused to give the hospital personnel a chance to care for his medical issues, and that Lt. McGhee, Lt. Bennett, and Lt. Jackson refused to ensure that his medical issues were addressed.

Plaintiff states that Nurse McFaul "deliberately terminated original blood draw due to grievance on heart, no response by staff on November 3, 2021." Dkt. No. 11 at 6. He contends that Warden Wilson, Sheriff Neal, Lt. McGhee, Lt. Bennett, Lt. Jackson, and Ms. Austin were aware of the kiosk (i.e. where grievances are filed), as well as the grievance procedure not being properly followed. He indicates that the grievance process was not available and that he does not have to exhaust administrative remedies.

Plaintiff asserts that the failure to train is a constitutional claim and says that Warden Wilson, Sheriff Neal, Sgt. Henderson and the transportation officers Ponder and O'Dell did not allow personnel at Wadley Hospital to administer medical care when an emergency happened. He also says that the hospital personnel did not provide him with medical care.

The first attachment to Plaintiff's amended complaint is a grievance dated January 6, 2022, in which he says that he has been having irregular heartbeat and chest pains. Dkt. No. 11-1. The response to this grievance says that he was seen on October 31, November 29, and December 17, 2021, and no sick call requests have been put in since December 17, 2021. *Id.* at 1 He has a follow-

up referral scheduled and a cardiology referral ordered. *Id.*

A sick call request attached to Plaintiff's amended complaint dated February 16, 2022 asks to see Ms. Hillhouse regarding the results of an echo test of his heart and his continuing irregular heartbeat, as well as a check for prostate cancer and colon cancer. *Id.* at 2. The response to this request says "place on provider's list."). *Id.*

A grievance dated November 24, 2021 says that ever since Plaintiff was given someone else's medication, he has had an irregular heartbeat and chest pains, but when he complains, he is only checked for blood pressure. *Id.* at 3. He asks that his heart be monitored by an EKG or some accurate device. He says that he told the nurse that day, and she told him his blood pressure was good and checked other test results from an earlier lab. The response to this grievance says that Plaintiff's concerns were addressed by the provider on November 29, 2021. *Id.*

The final exhibit attached by Plaintiff to his amended complaint is an inmate account data sheet, which shows that he was billed $109.00 for medications between January 24 and February 4, 2022. *Id.* at 4.

**II. The Motion for Summary Judgment - Bennet, McGhee, Neal, and Ponder**

A. The Defendants' Motion

Defendants Bennett, McGhee, Neal, and Ponder filed a motion for summary judgment (Dkt. No. 37) on July 12, 2023, asserting that Plaintiff did not exhaust his administrative remedies. This motion says that the first grievance filed by Plaintiff after the October 29, 2021 incident was the one attached to his amended complaint, dated November 24, 2021. The Defendants argue that neither this grievance nor any other filed by Plaintiff concerned the claims raised in his lawsuit, noting also that he did not file a Step Two appeal of the November 24 grievance.

The Defendants' summary judgment evidence includes a copy of Plaintiff's grievance file. This file includes the November 24 grievance as well as the January 6, 2022 grievance complaining about chest pains. A copy of the January 6 grievance which includes the investigator's findings says that on October 31, the Plaintiff complained of chest pain and indigestion to the nurse. No

irregular heartbeat was found, and the provider on call placed orders. On November 29, the Plaintiff saw the provider, and no cardiac concerns were found. On December 17, Plaintiff saw a nurse on sick call who identified an irregular heartbeat. An EKG was ordered and a prescription for aspirin 325 mg per day was given. No additional sick calls concerning chest pain were placed.

The next grievance in Plaintiff's grievance file concerning medical issues is dated March 10, 2022. Dkt. No. 37-2 at 15. This grievance asks for the address of Nurse Hillhouse's supervisors, which he refers to as the "central office out of state." The response to this grievance was that Plaintiff spoke to medical on March 24 and said that his issue had been resolved at that time.

On a grievance which Plaintiff dated February 29, 2022 (Dkt. No. 37-2, p. 22), he said that he was supposed to have been seen by Nurse Hillhouse regarding his irregular heartbeat and chest pains and his Echo test results, but she will not see him. The response to this grievance says that Plaintiff was seen by Hillhouse on March 9 and the results of his Echo test have been requested from Wadley Hospital; when the results come in, he will be scheduled to see the provider. Dkt. No. 37-2 at 23.

Plaintiff filed a grievance on March 2, 2022, complaining about his medication being deliberately changed and reduced by staff. The investigator's findings, signed by Nurse Gilchrest, say that Plaintiff's previous dose of 20 mg of omeprazole was the same one prescribed to him on October 31, but the times were changed by the medical department after a verbal request from Plaintiff. The dosage was increased to 40 mg after Plaintiff saw the provider on March 9 for chronic care and a special visit to review test results. Dkt. No. 37-2 at 27.

Plaintiff filed a Step Two appeal of this grievance on March 23, 2022. The grievance appeal says that Plaintiff is not satisfied with the response he received from Ms. Gilchrist or Ms. Hillhouse. He states that his heart is in a serious condition and wants an outside, unbiased decision from a neutral medical facility. The response from the jail administrator says that all medical decisions are made by the unit medical provider, and the jail would provide all off-unit appointments that the medical provider orders or in an emergency situation. Dkt. No. 37-2 at 18.

These are all of the grievances in his grievance file which Plaintiff filed concerning his heart condition. The grievance file contains numerous other grievances he filed, covering such topics as TV channels, a gas leakage, mail, asking for copies of previously filed grievances, addresses of outside medical personnel or hospitals, other medical issues including urine sample results, and wanting an eye exam, asking for contact information on the Prison Rape Elimination Act, asking for *in forma pauperis* forms, asking how much money he has on his account, asking in multiple grievances about an investigation being done by the Bowie County Sheriff's Department concerning an incident in which Plaintiff says he was assaulted, requesting test results from the MRI after the assault as well as a report on his visit to the eye doctor, multiple grievances on why earlier grievances did not get a response, sleeping on the same sheets and wearing the same clothes despite having scabies, lack of medical care for scabies, and having the air conditioning running in the winter. *See generally* Dkt. No. 37-2 at 2-63.

Defendants argue that Plaintiff did not file any grievances concerning the incidents forming the basis of the lawsuit. To the extent that the November 24 grievance relates to the incidents in the lawsuit, Defendants state that this grievance was untimely and that in any event, Plaintiff did not file a Step Two appeal and therefore did not exhaust his administrative remedies.

B. Plaintiff's Responses to the Defendants' Motion for Summary Judgment

In his first reply to the motion for summary judgment (Dkt. No. 38), Plaintiff complains that he is in the Texas Department of Criminal Justice and cannot make copies of his legal work. He refers to a kiosk malfunction and complains of a failure to properly answer grievances. Plaintiff then argues the merits of his claims.

In his second response to the motion for summary judgment (Dkt. No. 41), Plaintiff again complains that he cannot make copies of his legal work. He says that "Lt. Jackson, Warden Wilson, Lt. Bennett, Sheriff Neal, Sgt. Henderson and Ms. Austin were all made aware of the flawed Admin Grievance on the kiosk, as well as their failure to properly answer paper grievances as well." Dkt. No. 41 at 2). He then again argus the merits of his claims.

In his third response to the motion for summary judgment, Plaintiff contends that failing to

respond to grievances makes the grievance process unavailable. He states that his original lawsuit says that "the kiosk method they claimed was intact during the months of October throughout December of 2021, this process stayed flawed for a while and staff would refuse to bring you paper grievances but these numbers on the civil suit filed December 1, 2021." He then lists several dates and numbers, including "10-31-2021, no. 25705090; 10-31-2021, no. 25705180; 11-1-2021, no. 25714419; 11-3-2021, no. 25737982; 11-4-2021, no. 2578462; 11-4-2021, no. 25750300; 11-2-2021, no. 25723077; 11-2-2021, no. 25731130." He asks for a "rehearing en banc." Dkt. 48 at 2. Plaintiff's original complaint lists all of these as "grievances I filed on kiosk and no reply made to any of them." No grievances matching these descriptions appear in Plaintiff's grievance file; in fact, none of the grievances in the file bear numbers at all.

The first complaint in Plaintiff's grievance file concerning the failure to answer grievances is dated April 21, 2022. This grievance says that he saw Ms. Austin concerning a medical grievance to which he had not received a response on Step One or Step Two. The plaintiff does not specify any grievance numbers such as those appearing in his complaint. No response is given on the grievance.

On August 4, 2022, Plaintiff filed another grievance complaining about the failure to respond to grievances from May 9 until that day, concerning the incident of May 9 in which he was assaulted and beaten. The plaintiff again does not specify any grievance numbers such as those that appear in his complaint. The response says that all grievances have been responded to and returned to him, and the sheriff's department is still investigating and will get with him.

Plaintiff filed a Step Two appeal again complaining that several earlier grievances about the sheriff's department's failure to investigate the May 9 incident were not answered. Dkt. No. 37-2 at 47. The response to this grievance said that the investigation is not completed at this time.

On August 28, 2022, Plaintiff filed another grievance about his grievances concerning the May 9 incident not being answered. The response to this grievance says "statement about grievance complaint has already been answered verbally and formally." Dkt. No. 37-2 at 49.

In a Step Two appeal dated September 11, 2022, Plaintiff stated that his earlier grievances resulted in "an incomplete answer or response regarding my due process." The response to this grievance appeal, signed by jail administrator Austin, says that Plaintiff has received a response from Warden Wilson and from Austin to check his records.

On September 23, 2022, the Plaintiff filed a grievance stating that on August 24, he appealed the fact that numerous grievances had gone unanswered and no extensions had been received. He said that he filed a grievance on August 24 about the Sheriff's Department's delay concerning the May 9 incident in which Plaintiff was attacked by five or six white gang members. The response stated that the Plaintiff had been advised several times that they were still working on the case and that he had received all responses. Dkt. No. 37-2 at 58.

C. Discussion of the Motion for Summary Judgment and Plaintiff's Responses

The law governing the exhaustion of administrative remedies is found in 42 U.S.C. § 1997(e), which provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under this statute, prisoners are required to exhaust available administrative remedies before filing suit in federal court. *Jones v. Bock*, 549 U.S. 199, 202, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Proper exhaustion is required, meaning the prisoner must not only pursue all available avenues of relief, but must also comply with all deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89-95, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). This requirement means mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion; instead, prisoners must exhaust administrative remedies properly. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010). The district court may not

excuse failure to exhaust available administrative remedies prior to filing a lawsuit under the Prison Litigation Reform Act, even to take "special circumstances" into account. *Ross v. Blake*, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016); *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (stating that "pre-filing exhaustion is mandatory and the case must be dismissed if available administrative remedies were not exhausted").

All of the steps in a facility grievance procedure must be pursued in order to exhaust administrative remedies. *Johnson*, 385 F.3d at 515. The summary judgment evidence shows that the Bowie County Jail grievance procedure is modeled after that of the Texas Department of Criminal Justice - Correctional Institutions Division and has two steps. The first of these steps is decided by the unit grievance committee, consisting of the unit grievance office and two neutral staff members. Step Two allows the inmate to file an appeal with the jail administrator concerning the decision made at Step One. *See Bowie County Jail Grievance Plan*, Dkt. No. 37-1 at 1; affidavit of Warden Robert Page, Dkt. No. 37-3 at1.

The Fifth Circuit has stated that the exhaustion requirement must be interpreted in light of its purposes, which include the goal of giving prison officials "time and opportunity to address complaints internally." *Johnson*, 385 F.3d at 516, (citing *Porter v. Nussle*, 534 U.S. 516, 525, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). Thus, a grievance is considered sufficient to the extent it "gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id.* at 517.

The statute requires prisoners to exhaust "available" administrative remedies, and the Supreme Court has identified three circumstances under which administrative remedies are considered "unavailable." *Ross*, 578 U.S. at 643. The first of these is where the administrative remedy procedure operates as a simple dead end, with officials unable or consistently unwilling to provide any relief. *Id.* The Court gave as an example where a prison handbook directed inmates to submit their grievances to a particular administrative office, but in practice that office disclaimed

any capacity to consider those petitions. *Id.*

The second circumstance is where an administrative scheme is so opaque that it becomes, practically speaking, incapable of use; in other words, a mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. *Id.* at 643-644.

The third circumstance is when prison or jail administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

The Fifth Circuit has long held that conclusory assertions of exhaustion are insufficient to overcome a properly supported motion for summary judgment. *See, e.g.*, *Gilliam v. Anderson County Sheriff's Department*, 825 F.App'x 232 (5th Cir. 2020) (conclusory assertion that plaintiff "attempted to exhaust" administrative remedies was not sufficient); *Huff v. Neal*, 555 F.App'x 289, 2014 U.S. App. LEXIS 1535, 2014 WL 274500 (5th Cir., January 27, 2014) (unsupported allegations of exhaustion are insufficient to defeat a motion for summary judgment because "conclusory allegations supported by conclusory affidavits are insufficient to require a trial") (citing *Shaffer v. Williams,* 794 F.2d 1030, 1033 (5th Cir. 1986)); *see also Kidd v. Livingston*, 463 F.App'x 311, 2012 U.S. App. LEXIS 3970, 2012 WL 614372 (5th Cir. 2012) ("conclusory assertions and production of an unprocessed Step Two form in the district court failed to create a genuine dispute as to his exhaustion of this grievance,") (citing *Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004)); *Ryan v. Phillips*, 558 F.App'x 477, 2014 U.S. App. LEXIS 5087, 2014 WL 1017117 (5th Cir., March 18, 2014) ("conclusory and unsubstantiated assertion that he initiated the applicable grievance procedure is insufficient to refute the lack of evidence that he filed any formal or informal grievances,") (citing *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)).

These holdings comport with the long-standing principle that a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Powers v. Northside Independent School District*, 951 F.3d 298, 307 (5th Cir. 2020).[1]

Even though Plaintiff's sworn pleadings are competent summary judgment evidence, his assertions are wholly conclusory and amount to no more than a scintilla of evidence, and thus cannot overcome the Defendants' properly supported motion for summary judgment. The summary judgment evidence shows that Plaintiff did not file any grievances complaining of the events of October 29, 2021, and the following days. Plaintiff asserts that he filed eight grievances over the five-day period between October 31 and November 4, giving grievance numbers for each one, but claims that he did not receive responses on any of these - even though the record shows that he received responses on dozens of other grievances and none of the grievances in the record bear any numbers at all, much less numbers corresponding to those provided by Plaintiff. He filed multiple grievances complaining of the failure to respond to other grievances, but none complaining of an alleged failure to respond to the grievances he says he filed between October 31 and November 4, 2021. *See also Nelson v. Sollie*, slip op. no. 22-60461, 2023 WL3863445 at *1-2 (5th Cir., June 7, 2023) (plaintiff's conclusory assertion, given in sworn testimony at an evidentiary hearing, that he filed a grievance to which he never received a response is insufficient to survive summary judgment).

---

[1] Otherwise, a prisoner could defeat the exhaustion requirement by the simple expedient of filing conclusory declarations claiming exhaustion without support in the record, or asserting that prison officials refused to process his grievances. *West v. Polk*, civil action no. 5:19cv74, 2022 U.S. Dist. LEXIS 176063, 2022 WL 7376199 (E.D.Tex., May 18, 2022), *Report adopted at* 2022 U.S. Dist. LEXIS 175055, 2022 WL 4486970 (E.D.Tex., September 27, 2022), *citing Wall v. Black*, civil action no. 5:08cv274, 2009 U.S. Dist. LEXIS 90193, 2009 WL 3215344 (S.D.Miss., September 30, 2009) (prisoner's claim that prison officials denied him grievance forms does not automatically defeat summary judgment on the issue of exhaustion; instead, the prisoner must present sufficiently specific facts and not bald, conclusory assertions).

Plaintiff has offered nothing to show that the administrative remedy procedures of the Bowie County Jail are "a simple dead end," that they are so opaque as to be incapable of use, or that he was thwarted from taking advantage of the grievance procedure through machination, misrepresentation, or intimidation. On the contrary, the record shows that Plaintiff made extensive use of the grievance procedure on other issues and that he routinely received replies to these grievances. His conclusory allegations are insufficient to overcome the motion for summary judgment filed by the Defendants Bennett, McGhee, Neal, and Ponder, and this motion should be granted.

Several other jail officials, including Wilson, Austin, Henderson, Jackson, and O'Dell, have not answered the lawsuit and did not join in the motion for summary judgment. However, this motion and the summary judgment evidence demonstrates that Plaintiff did not exhaust his available administrative remedies regarding his claims. The Fifth Circuit has held that when a defending party establishes that a plaintiff has no cause of action, this defense inures to the benefit of defaulting or non-moving defendants. *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001). The motion for summary judgment established that Plaintiff had no cause of action against the defendants from the Bowie County Jail because he did not exhaust his administrative remedies. Plaintiff's claims against the non-moving jail defendants Wilson, Austin, Henderson, Jackson, and O'Dell may be dismissed on this basis as well.

**III. The Motion to Dismiss - Ebey, Hillhouse, McFaul, Owenby, and Phipps**

A. The Defendants' Motion to Dismiss

The Defendants Ebey, Hillhouse, McFaul, Owenby, and Phipps have filed a motion to dismiss for failure to state a claim upon which relief may be granted. Of these Defendants, Hillhouse is a nurse practitioner, while the others are nurses.

These Defendants state that according to Plaintiff's amended complaint, Nurse Phipps mistakenly administered another inmate's medication to Plaintiff, causing him to suffer from an irregular heartbeat, chest pain, dizziness, and fainting. He was taken to Wadley Hospital that day for a chest X-ray. Plaintiff said that the transportation officers "refused to allow Hospital permission

11

to care for me" and that the hospital staff failed to provide medical care for him. He contended that Hillhouse "denied him access to treatment at Wadley Hospital as well as proper medication and treatment at Bowie County Jail" and that McFaul "deliberately terminated original blood draw due to grievance on heart."

The Defendants contend that the grievances attached to Plaintiff's complaint show that he was seen by medical personnel on October 31, November 29, and December 17, 2021. After he complained of irregular heartbeat and chest pains, a nurse named Peacock told him that his blood pressure results were good. These grievances also showed that Nurse Hillhouse discussed his concerns with him on November 29 and that he had been referred to an outside cardiologist. The Defendants note that Plaintiff does not allege any permanent injuries or harm, nor did he assert that his chest X-ray or other tests proved abnormal.

`Thus, the Defendants claim that Plaintiff does not allege facts to show that any of the medical defendants were subjectively aware of any need for medical care beyond that which was already being provided, nor that they disregarded such a need. On the contrary, the Defendants argue that Plaintiff's pleadings and exhibits show that he was provided with medical care and attention, including a transfer to a local hospital immediately after the medication error occurred as well as a referral to an outside cardiologist. Plaintiff's grievances also indicate that an echo cardiogram was performed of his heart. The Defendants contend that Plaintiff has failed to state a claim for deliberate indifference to his serious medical needs and ask that his claims against them be dismissed with prejudice. Plaintiff did not file a response to the motion to dismiss.

B. Applicable Legal Standards

Fed. R. Civ. P. 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief which is plausible on its face. *Butler v. S. Porter*, 999 F.3d 287, 292 (5th Cir. 2021); *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The

Supreme Court stated that Rule 12(b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. at 555.

Fed. R. Civ. P. 8(a) does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Courts need not accept legal conclusions as true, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient. *Id*. at 678.

A plaintiff meets this standard when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible," or if the complaint pleads facts merely consistent with or creating a suspicion of the defendant's liability. *Id.*; *see also Rios v. City of Del Rio, Tex*., 444 F.3d 417, 421 (5th Cir. 2006). *Pro se* plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but *pro se* plaintiffs must still plead factual allegations which raise the right to relief above the speculative level. *Chhim v. University of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

If the facts alleged in a complaint do not permit the court to infer more than the mere possibility of misconduct, a plaintiff has not shown entitlement to relief. *Id*. (citing Fed. R. Civ. P. 8(a)(2)). A complaint is properly dismissed if it does not state sufficient facts to set forth a plausible claim or if the claims it raises are merely speculative. *Bass v. Stryker Corp*., 669 F.3d 501, 506 (5th Cir. 2012).

The Fifth Circuit has stated that while *pro se* complaints are construed liberally, the court is still bound by the allegations of the complaint and is not free to speculate that the plaintiff "might" be able to state a claim if given yet another opportunity to amend the complaint. *Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). The court explained as follows:

> For example, if an IFP plaintiff, in amending his complaint through a response to a questionnaire, alleges in his response that he received inadequate medical care while incarcerated, we should not reverse the dismissal of the complaint on the basis that the plaintiff could possibly add facts that would demonstrate that he was treated with deliberate indifference in the medical care that he received. As another example, if an IFP prisoner asserts in the questionnaire response that he has been denied recreation time, we should not reverse dismissal on the ground that he might also be able to assert a claim that the denial was in retaliation for his having filed a grievance.

With regard to claims of deliberate indifference to a prisoner's serious medical needs, the Fifth Circuit has held that such deliberate indifference could state a civil rights violation, but a showing of nothing more than negligence does not. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997); *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). In order to show deliberate indifference, the prisoner must show (1) objective exposure to a substantial risk of serious harm, (2) the defendants had subjective knowledge of this substantial risk, (3) the defendants denied or delayed the prisoner's medical treatment despite their knowledge of this substantial risk, and (4) this denial of or delay in treatment resulted in substantial harm. *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019).

Disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference. *Id.*; *see also Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)) (prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.")

Claims of negligence, medical malpractice, or that the treatment provided has not been as successful as the plaintiff would have liked are insufficient to set forth constitutional violations. *Gobert*, 463 F.3d at 346; *Norton*, 122 F.3d at 291. The fact that medical care given is not the best that money can buy, or that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992).

In *Domino v. TDCJ-ID*, 239 F.3d 752 (5th Cir. 2001), a prisoner expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination. The prisoner committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

*Domino*, 239 F.3d at 756; *see also Stewart v. Murphy*, 174 F.3d 530, 534-38 (5th Cir. 1999) (no deliberate indifference where patient died from bedsores where treatment was provided and orders for care were given, despite evidence that the bedsores were not discovered during the patient's stay in the hospital, the doctors often did not review the nurses' notes or check to see if their orders were carried out, antibiotics were not prescribed although the nurses' notes said that the patient had an infection from a catheter, and the treating physician did not follow a recommendation that the patient be transferred despite knowing that the facility was understaffed).

The fact that an inmate receives the wrong medication does not itself show deliberate indifference. *Daniels v. Beasley*, 241 F.App'x 219, 220 (5th Cir. 2007); *Nunley v. Mills*, 217 F.App'x 322, 324 (5th Cir. 2007). In *Perkins v. Texas Department of Criminal Justice*, 127 F.App'x

15

142, 144 (5th Cir. 2005), the plaintiff was prescribed a sulfa drug to which he had a known allergy. The district court dismissed the lawsuit upon a finding that the prescription was negligent rather than deliberately indifferent, and the Fifth Circuit affirmed this determination.

C. Application of the Standards to Plaintiff's Pleadings

Plaintiff asserts in his amended complaint that Nurse Practitioner Hillhouse "den[ied] access to treatment at Wadley Hospital, as well as proper medication and treatment at Bowie County Jail." He says that Nurses Ebey, McFaul, Owenby, and Paul "refuse to properly monitor heart and take serious issue of chest pains." Plaintiff says that he requested an EKG and the monitoring of his heart rate, but these nurses "all claimed that meds couldn't cause any problems to less amounts and refused to take my claim serious for medical attention. Nurse McFaul deliberately terminated original blood draw due to grievances and heart and no response by nurse staff on November 3, 2021." Plaintiff also complained that Nurse Phipps gave him someone else's medication and later called the provider but nothing further was done; (however, he acknowledges that he was sent to Wadley Hospital for a chest X-ray).

In the first grievance attached to his amended complaint, dated January 6, 2022, Plaintiff asserts that he is repeatedly having an irregular heartbeat and chest pains from time to time; he has seen Nurse Hillhouse and an EKG has been done, but he needs to be monitored on a treadmill to find out what is the problem. A sick call request form dated February 16, 2022 asks to see Hillhouse regarding the results of the Echo test and his continuing irregular heartbeat, and the response was that he would be put on the list to see the provider.

On November 24, 2021, a grievance says that ever since he received another inmate's medication, he has had an irregular heartbeat and chest pains, but when he complains, he is only checked for blood pressure. He says that Nurse Peacock told him his blood pressure is good. The response to this grievance says that Plaintiff's concerns were addressed when he saw the provider on November 29, 2021.

16

These allegations consist of little more than "labels and conclusions" and amount to naked assertions devoid of further factual enhancement. The fact that Nurse Phipps gave him another inmate's medication does not itself show deliberate indifference to his serious medical needs. *Daniels*, 241 F.App'x at 220. Plaintiff's own pleadings and attachments show that he was taken to Wadley Hospital after receiving the incorrect medication, he saw medical personnel on several occasions, he received an Echo test and an EKG, and he was referred to an outside cardiologist. While Plaintiff may have disagreed with the treatment he received or believed that other treatment - such as monitoring on a treadmill - may have been more appropriate, he has failed to state a claim upon which relief may be granted for deliberate indifference to his serious medical needs.

Plaintiff's general assertions that the nurses "denied access to treatment" or "refuse to properly monitor heart and take serious issue of chest pains," and that Nurse McFaul "deliberately terminated original blood draw due to grievances and heart" are likewise conclusory and fail to state a claim upon which relief may be granted. *Baughman v. Hickman*, 935 F.3d 302, 310 (5th Cir. 2019) (allegations that doctors "denied [plaintiff] adequate pain medication" and "access to physical therapy" were conclusory and failed to state a claim). Plaintiff has failed to state a claim upon which relief may be granted against the jail nursing staff.

In addition, as noted above, the motion for summary judgment and the summary judgment evidence demonstrate that Plaintiff did not exhaust his available administrative remedies regarding his claims. Because the defense of failure to exhaust remedies the jail nurses, Plaintiff's claims against them may be dismissed on this basis as well. *Lewis*, 236 F.3d at 768.

**IV. Turn Key Medical**

The plaintiff also named Turn Key Medical, the private corporation that furnishes medical care to Bowie County inmates, as a defendant. A private company which has been contracted to provide medical services for a county jail is treated as a municipal or local government entity for purposes of 42 U.S.C. §1983, and therefore claims against such a company are analyzed under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). *Kibbey v. Collin County Detention Facility*, civil action no. 4:21cv799, 2023 U.S. Dist. LEXIS 48331, 2023 WL 2598666 (E.D. Tex., March 1, 2023), r*eport adopted at* 2023 U.S. Dist. LEXIS 47060, 2023 WL 2593152 (E.D. Tex., March 20, 2023); *see also Valdez v. Corrections Corp. of America*, 263 F.3d 161, 2001 U.S. App. LEXIS 16279, 2001 WL 802698 (5th Cir., June 5, 2001). As such, Plaintiff must show a policymaker, an official custom or policy, and a violation of constitutional rights whose moving force is the policy or custom. *See Pierce v. Peterson*, civil action no. 22-5274, 2023 WL 5383651 (E.D.La., August 22, 2023); *Guillotte v. Knowlin*, civil action no. 21-1422, 2021 WL 7632004 at *2-3 (E.D. La., December 7, 2021). Plaintiff has not alleged any policy or custom on the part of Turn-Key Health that deprived him of a constitutional right. He has not stated a claim upon which relief may be granted against Turn Key Health, nor did he exhaust his administrative remedies regarding any claims against Turn Key Health, and his claims against Turn Key Health may be dismissed for these reasons.

**V. The Non-Jail Defendants**

Finally, Plaintiff's amended complaint named as defendants unknown members of the Wadley Hospital staff. The Court assumes that Plaintiff has no available administrative remedies concerning these defendants since the Wadley Hospital staff is not subject to the jail grievance procedure. Plaintiff says that the hospital staff "witnessed me fainting and didn't administer medical attention, waiting on permission, violation hypercredical [sic] medical oats [sic]." He also complains of the emergency room staff's "failure to administer medical assistance to him." As in *Baughman*, 935 F.3d at 310, these allegations do not set out a claim for deliberate indifference; rather they are entirely conclusory and fail to state a claim upon which relief may be granted. *See also Moreno v.*

18

*Kwarting*, civil action no. 2:20cv146, 2021 WL 6010573 (S.D.Tex., June 1, 2021) (claim that physical therapy was delayed and that prisoner was denied adequate medical care, resulting in "excruciating pains" were "conclusory and threadbare" and therefore failed to state a claim upon which relief may be granted), *report adopted at* 2021 U.S. Dist. LEXIS 226806, 2021 WL 5492599 (S.D.Tex., November 23, 2021), *appeal dismissed* slip op. no. 21-40904, 2022 U.S. App. LEXIS 3270, 2022 WL 17250177 (5th Cir. 2022), *cert. denied*, 144 S.Ct. 151 (2023).

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees and identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim that is plausible on its face and thus does not raise a right to relief above the speculative level. *Montoya v. FedEx Ground Packaging System Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Plaintiff's allegations do not set out sufficient facts which, taken as true, state a claim which is plausible on its face against the unnamed defendants at Wadley Hospital. Consequently, these allegations may be dismissed for failure to state a claim upon which relief may be granted.

## RECOMMENDATION

It is accordingly recommended that the motion for summary judgment of the Defendants Bennett, McGhee, Neal, and Ponder (Dkt. No. 37) and the motion to dismiss of the Defendants Ebey, Hillhouse, McFaul, Owenby, and Phipps (Dkt. No. 54) be granted and that the above-styled civil action be dismissed without prejudice.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

SIGNED this the 2nd day of February, 2024.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE